**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COURTNEY G. TRESSLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 16A05-1112-CR-699 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DECATUR CIRCUIT COURT
The Honorable John A. Westhafer, Judge
Cause No. 16C01-1008-FA-166

**June 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

After entering into a plea agreement for the death of her four-year-old son, Courtney G. Tressler now appeals her ten-year executed sentence for Class B felony neglect of a dependent. Tressler argues that her sentence is inappropriate in light of the nature of the offense and her character. Finding that the disturbing nature of this offense warrants the sentence Tressler received, we affirm.

## Facts and Procedural History[1]

On May 17, 2010, Detective Bill Meyerrose of the Greensburg Police Department responded to a report concerning the death of a child at the Tressler residence. Upon arriving at the residence, Detective Meyerrose met Tressler and her husband, Greg Tressler. The deceased child was identified as four-year-old P.E. P.E. was the son of Tressler and Martin Wesley Ettinger. P.E. was mentally and physically disabled as the result of physical abuse he suffered from Ettinger when he was two weeks old. Ettinger was convicted in Michigan for abusing P.E. and was serving his sentence in Michigan at the time of the events in this case. Tressler said that she fed P.E. around 11:00 a.m. that day and placed him back in his crib. Tressler further stated that she found P.E. dead when she returned to check on him around 3:00 p.m. After briefly examining the scene, Detective Meyerrose and Decatur County Coroner, Doug Banks, agreed to call the Indiana State Police to process the scene as a possible crime scene.

---

[1] Because the factual basis for Tressler's plea is not very extensive, we glean most of our facts from the probable-cause affidavit, as do the parties in this case. At Tressler's guilty plea hearing, the State offered the affidavit for probable cause and its attachments as a supplement to Tressler's factual basis without objection from Tressler. Tr. p. 14. The trial court took notice of the affidavit for probable cause, which is included in Tressler's Appendix. In addition, Tressler admitted numerous exhibits. *Id.*

2

The next day an autopsy was performed on P.E. According to forensic pathologist John E. Cavanaugh, M.D., P.E. died as a result of failure to thrive due to malnutrition and dehydration. Appellant's App. p. 10. Despite Tressler's claim that she had recently fed P.E., the pathologist found no significant amount of food in P.E.'s intestines or stomach. Dr. Cavanaugh noted that the physical appearance of P.E.'s body clearly showed profound malnutrition and no body fat. The skin on P.E.'s face was drawn tightly against his skull and face bones with obvious emaciation. At the time of his death, four-year-old P.E. weighed only twelve pounds and was thirty-three inches tall.

In August 2010, the State charged Tressler with Class A felony neglect of a dependent and Class C felony reckless homicide. In September 2011, pursuant to a written plea agreement, Tressler pled guilty to Class B felony neglect of a dependent. In exchange, the State agreed to cap her sentence at ten years but otherwise left her sentence to the trial court's discretion.

At the guilty-plea hearing, evidence was presented concerning P.E.'s disability. Evidence showed that the brain injuries P.E. suffered from Ettinger's abuse left him unable to talk, walk, and control most of his physical movements. According to Tressler, "[P.E.] was completely dependent on me. He couldn't walk. He couldn't talk. He couldn't sit up or do anything that a normal child his age should be able to do." Tr. p. 10.

Despite P.E.'s substantial needs, Tressler admitted that P.E. had not received medical attention in three and a half years. *Id.* at 12. In the months leading up to P.E.'s death, his condition declined such that feeding him became more difficult. Tressler began to feed P.E. a mixture of the nutritional supplements Ensure and "Thick It." *Id.*

Tressler also began to notice that P.E. had a large bowel movement twenty to thirty minutes after she fed him the mixture. *Id*. Despite P.E.'s chronic diarrhea, Tressler failed to pursue medical treatment for P.E. and allowed him to suffer from dehydration and malnutrition. The trial court accepted Tressler's plea and set the matter for sentencing.

At the sentencing hearing, Tressler testified "I let [P.E.] down and failed to protect and care for him properly, which is all I had ever wanted and intended to do. I will never forgive myself for my negligence nor do I expect anyone else to." *Id*. at 49. Defense counsel conceded that this was a "sad" situation and that Tressler was negligent; however, counsel argued that there was no malice or intent to do anything wrong. *Id*. at 70-76. Defense counsel asked the court to "hone in" and base its decision upon the information submitted to the court, to consider Tressler's other children, and to recognize that there were other options, such as home detention and work release. *Id*. at 76. In determining Tressler's sentence, the trial court noted the aggravators and mitigators. As for mitigators, the trial court noted that Tressler was remorseful and unlikely to reoffend because she had no criminal record. As for aggravators, the trial court identified P.E.'s age and the fact that he was disabled. The trial court sentenced Tressler to ten years executed in the Department of Correction.

Tressler now appeals her sentence.

4

## Discussion and Decision

Tressler argues that her executed sentence of ten years is inappropriate in light of the nature of her offense and her character. She asks us to revise her sentence to ten years with four years suspended to probation.

Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

Tressler pled guilty to Class B felony neglect of a dependent. "A person who commits a Class B felony shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." Ind. Code § 35-50-2-5. Here, the trial court sentenced Tressler to the advisory term, all executed.

Regarding the nature of the offense, the record shows that it is egregious. In contesting her sentence, Tressler argued that she had seen P.E. hurt and in pain during the

medical testing after his father injured him and that she "never wanted to hurt my children physically or mentally." Tr. p. 50. However, hurting P.E. is exactly what Tressler accomplished. Despite P.E.'s extensive special needs, Tressler failed to provide regular medical attention for three and a half years. When P.E. developed chronic diarrhea a few months before his death, rather than provide necessary medical attention, Tressler chose to blind herself to his deteriorating condition and negligently denied P.E. the medical care he desperately needed.

In the process, Tressler witnessed her son become profoundly emaciated, weighing only twelve pounds at the time of his death. The autopsy report shows that P.E. had "steely-gray," brittle, "spiky," hair; sunken periorbital and temporal tissue; a triangular head; and negligible body fat. Ex. F. The photographs taken of P.E. on the day he died reveal a profoundly emaciated child. We can say without hesitation that the nature of this offense warrants the sentence imposed by the trial court.

As for Tressler's character, we acknowledge that she has no criminal history. In addition, Tressler claims to be "truly sorry" and saddened by the death of P.E. Tr. p. 49. In fact, the trial court noted Tressler's remorseful conduct. However, during the course of the investigation, Tressler lied to Detective Meyerrose about the dates she had taken P.E. to the doctor. Tressler indicated specific dates in which she claimed she took P.E. to the doctor when, in fact, the investigation revealed that P.E. had not been to the doctor in three and a half years. *Id.* at 54. Further, Tressler, as P.E.'s primary caregiver, saw P.E.'s deteriorating condition on a daily basis. As a daily reminder of P.E.'s worsening health, Detective Meyerrose noticed a picture on the wall in which P.E.'s cheeks were

"full" and he was wearing the same clothes as the day he died. Ex. P, p. 17. Despite the stark contrast between P.E. and the picture, Tressler chose not to seek medical attention and instead witnessed P.E.'s gradual deterioration and death. Contrary to Tressler's argument, she did not do "all she could, short of forcing a feeding tube into the child to prolong his already shortened life." Appellant's Br. p. 11.

Finally, although we acknowledge that a ten-year executed sentence means that Tressler's other children will be without their mother, Tressler has failed to show that the hardship to be suffered by her children is more severe than that suffered by any child whose parent is incarcerated.

Tressler has failed to persuade us that her ten-year executed sentence is inappropriate.

Affirmed.

CRONE, J., and BRADFORD, J., concur.